# N THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

NIKOLAOS BOSCARINO,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 3:15-cv-72 |
| - vs - | | | District Judge Walter Herbert Rice |
| | | | Magistrate Judge Michael R. Merz |

ERNIE MOORE, Warden,
 Lebanon Correctional Institution,

|  |  |
|---|---|
| | : |
| Respondent. | |

# REPORT AND RECOMMENDATIONS

This is an action pursuant to 28 U.S.C. §2254 for a writ of habeas corpus.  Petitioner Boscarino seeks relief from his conviction in the Montgomery County Common Pleas Court and consequent sentence to seven years imprisonment, now being served in Respondent's custody. He pleads the following grounds for relief.

> **Ground One**:  The prejudicial effect of allowing evidence regarding Petitioner's history as a Mixed Martial Arts fighter denied Petitioner his right to a fair trial.
>
> **Supporting Facts:**  1) Petitioner's counsel filed a motion in limine in the trial court seeking to exclude this evidence due to its prejudicial effect; 2) the trial court overruled the motion in limine and admitted the evidence; 3) the trial court instructed the jury during voir dire that " Defendant is a mixed martial arts fighter"; 4) An investigating officer testified about finding several cards in Petitioner's wallet identifying him as a mixed martial arts fighter, and about doing internet research confirming that Petitioner was a mixed martial arts fighter; 5) The prosecutor mentioned that Petitioner was a mixed martial arts fighter twice during his closing argument; 6) No evidence was presented regarding Petitioner's training, experience, or record as a mixed martial arts fighter.

**Ground Two:** Petitioner's trial counsel provided ineffective assistance due to his failure to renew the objection at trial to evidence regarding Petitioner's history as a mixed martial arts fighter.

**Supporting Facts:** 1) Petitioner's counsel filed a motion in limine in the trial court seeking to exclude this evidence due to its prejudicial effect; 2) the trial court overruled the motion in limine and admitted the evidence; 3) the trial court instructed the jury during voir dire that "Defendant is a mixed martial arts fighter"; 4) An investigating officer testified about finding several cards in Petitioner's wallet identifying him as a mixed martial arts fighter, and about doing internet research confirming that Petitioner was a mixed martial arts fighter; 5) The prosecutor mentioned that Petitioner was a mixed martial arts fighter twice during his closing argument; 6) Petitioner's trial counsel failed to object to any of these references or testimony, thus waiving the issue for any direct appeal, and forcing Petitioner's appellate counsel and current counsel to assert ineffective assistance of counsel.

**Ground Three:** The evidence presented at trial was insufficient to support Petitioner's conviction.

**Supporting Facts:** 1) No witness was able to testify as to the cause of Officer's Smith's injury to the back of his head, 2) Off. Smith had no idea how he inured the back of his head, 3) Off. Smith's injuries are attributable to other, previous injuries, 4) The State was required to prove Petitioner knowingly caused serious physical injury to Off. Smith, 5) Because no evidence was presented as to the cause of Off. Smith's concussion to the back of his head, the State failed to meet its burden beyond a reasonable doubt.

(Petition, Doc. No. 1.)

**Procedural History**

This case arises out of an attempted citation of Petitioner for public urination outside

Taggart's Pub on Patterson Road in Dayton on the morning of August 12, 2011.  Out of

Boscarino's confrontation with Dayton Police and a pub "bouncer," he was indicted by a Montgomery County grand jury on a number of counts, the only one of which relevant here is felonious assault on a peace officer in violation of Ohio Revised Code § 2903.11(A)(1) with a repeat violent offender specification.

Defense counsel filed a pretrial motion in limine to exclude any reference to Boscarino's status as a mixed martial arts ("MMA") fighter.  After a hearing, Common Pleas Judge Steven Dankof denied the motion (State Court Record, Doc. No. 7, PageID 93, 235-36).  Counsel did not renew the objection at trial.  Boscarino's MMA status was referred to by the trial judge in voir dire, by Dayton Detective Gary Engel in testimony, and by the prosecutor in closing argument, all without objection.  Boscarino was convicted by the jury of the felonious assault charge and separately by the trial judge on the repeat offender specification on which a jury was waived.  He was then sentenced to the seven-year term he is now serving.

Represented by new counsel, Boscarino appealed to the Second District Court of Appeals, raising as assignments of error (1) that his conviction is supported by insufficient evidence, (2) that his conviction is against the manifest weight of the evidence, and (3) that he suffered ineffective assistance of trial counsel when his attorney failed to object at trial to references to his MMA fighter status.  The appellate court affirmed the conviction, *State v. Boscarino*, 2014-Ohio-1858, 2014 Ohio App. LEXIS 1819 (2nd Dist. May 2, 2014), and the Ohio Supreme Court declined further review.  *State v. Boscarino*, 140 Ohio St. 3d 1451 (2014).  The instant habeas case was then timely filed on February 20, 2015, and became ripe for decision on the filing of Boscarino's Reply on May 8, 2015.

# Analysis

**Ground One:  Prejudicial Admission of Boscarino's MMA Status**

In his First Ground for Relief, Boscarino asserts he was denied a fair trial when the trial judge allowed the jury to learn in several different ways that he was a mixed martial arts fighter (Brief in Support of Petition, Doc. No. 2, PageID 24-29.)   Recognizing that errors in the admission of evidence do not usually rise to the level of constitutional violations, Boscarino cites several cases where the evidence has been found prejudicial enough to deny a fair trial.  *Id.*  at PageID 24-26.

**Procedural Default**

The Warden asserts Boscarino has procedurally defaulted on this claim by not raising it on appeal to the Second District (Return of Writ, Doc. No. 8, PageID 1446-48)

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional

rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).  *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*. Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485; *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985).  Failure to present an issue to the state supreme court on discretionary review constitutes procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).  "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d

5

423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting O'Sullivan v. Boerckel, 526 U.S. 838, 846-7(1999)); see also Deitz v. Money, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]").

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

In his Reply Boscarino recognizes the applicability of *Maupin* (Doc. No. 9, PageID

1463).  He assumes *arguendo* that the first three prongs of *Maupin* can be met, but argues that the State has not addressed them and states he does not admit them (*Id.*), so the Court will address them first.

Under Ohio law, objections made to evidence in a motion *in limine* are waived unless renewed at trial.  *State v. Cephus*, 161 Ohio App. 3d 385 (Ohio App. 2nd Dist. 2005).  It is undisputed that trial counsel did not renew the objection at any of the times Boscarino's MMA status was mentioned during trial.

But even if Ohio did not have the *in limine* renewal rule or trial counsel had not made the *in limine* motion, Ohio's contemporaneous objection rule would have prevented raising the claim on appeal.  That rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

The asserted default here is failure to raise this claim at all in the Second District.  It was raised on further appeal to the Ohio Supreme Court which did not expressly rule that it had not

been raised below. However, in *Simpson v. Sparkman*, 94 F.3d 199 (6th Cir. 1996), the court held that where a habeas petitioner raises his constitutional claim for the first time before a State's highest court which then does not decide the claim, the federal courts are not to assume that state courts do not observe their own procedural bars, but instead must assume that state courts enforce those bars. 94 F.3d at 203, *citing Tower v. Phillips,* 7 F.3d 206, 211 (11th Cir. 1993). The Ohio Supreme Court will not consider an assignment of error that was not raised in the court below . ¶ 2 of the syllabus in *State v. Williams,* 51 Ohio St. 2d 112 (1977)(*Toledo v. Reasonover*, 5 Ohio St. 2d 22 (1965), approved and followed). This explicitly includes constitutional questions. *State v. Phillips,* 27 Ohio St. 2d 294 (1971).

A habeas petitioner "can overcome a procedural default by showing (a) cause for the default and (b) actual prejudice from it." *Hall v. Vasbinder,* 563 F.3d 222, 236 (6th Cir. 2009); *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004), *quoting Murray v. Carrier*, 477 U.S. 478 (1986). Boscarino correctly asserts that attorney error amounting to ineffective assistance of counsel can constitute cause to excuse a procedural default. *Murray v. Carrier,* 477 U.S. 478, 488 (1985); *Howard v. Bouchard,* 405 F.3d 459, 478 (6th Cir. 2005); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999); *Gravley v. Mills,* 87 F.3d 779, 785 (6th Cir. 1996). The ineffective assistance claim cannot be presented as cause if it was procedurally defaulted in the state courts, unless one of the standard excuses for that procedural default exists, to wit, actual innocence or cause and prejudice. *Edwards v. Carpenter*, 529 U.S. 446 (2000). But that did not happen here – Boscarino did present a claim to the Second District that his trial attorney provided ineffective assistance of trial counsel by not renewing the objection. The Second District decided that claim (the third assignment of error) as follows:

> **[*P19]** In his third assignment of error, Boscarino alleges ineffective assistance of counsel based on his attorney's failure to

object to evidence about him being a mixed-martial-arts fighter. Although defense counsel raised the issue in a failed pretrial motion in limine, counsel did not renew the objection at trial when the State presented evidence that Boscarino was a licensed mixed-martial-arts fighter. (*See, e.g.*, Tr. Vol. IV at 718-719).

 [**\*P20**] To prevail on his ineffective-assistance claim, Boscarino must show that his attorney's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *Id*. at 694. On the record before us, we see no ineffective assistance of counsel.

 [**\*P21**] In denying Boscarino's motion in limine, the trial court found that evidence about his status as a licensed mixed-martial-arts fighter was highly relevant and that its probative value was not outweighed by the danger of unfair prejudice. (Doc. #93). A trial court enjoys considerable discretion when balancing the probative value of evidence against the danger of unfair prejudice, and we will not disturb its determination absent an abuse of discretion. *State v. Thompson*, 2d Dist. Montgomery No. 22984, 2010-Ohio-1680, ¶ 151. We see no abuse of discretion in the trial court's pretrial ruling.

 [**\*P22**] Boscarino's status as a licensed mixed-martial-arts fighter was relevant to his awareness that his punches could inflict serious physical harm. That issue was material because Boscarino was charged with felonious assault, which required proof that he knowingly caused serious physical harm to Smith. *Cf. People v. Castro*, Guam S.Ct. No. CRA12-027, 2013-Guam-20, 2013 WL 5891578, ¶ 32 (Oct. 25, 2013) ("Evidence of Castro's mixed martial arts participation and expertise was relevant to prove the awareness component of recklessness because it encompasses his particular knowledge and experience. * * * One can infer that Castro was aware that his punch to Dunham's face could cause a substantial risk of bodily injury or serious bodily injury[.]"); *State v. Thompson*, Wash. App. No. 64631-1-I, 2010 Wash. App. LEXIS 2099, 2010 WL 3620240, \*5 (Sept. 20, 2010) ("Thompson next contends that the trial court erred by finding evidence of his prior cage fighting experience more probative than prejudicial. Thompson is incorrect. * * * [T]he evidence tends to establish that his use of force was reckless, as he was likely aware of the amount of force necessary to subdue a person.")*; People v. Scott*, 47 A.D.3d 1016, 1020-21, 849 N.Y.S.2d 335, 339-40 (2008) ("We

also are unpersuaded by defendant's claim that County Court committed reversible error in admitting his certified professional boxing records into evidence and allowing the People to question him about being a boxer. County Court found these records, which included 19 wins by knockout, relevant to whether defendant possessed the ability to kill a person with his fists, his awareness of such lethal capacity and the intent inferable from repeatedly punching the 59-year-old victim."). The trial court also reasonably concluded that the probative value of Boscarino's status as a mixed-martial-arts fighter was not outweighed by the danger of unfair prejudice.

[*P23] Having found no abuse of discretion in the trial court's ruling on the motion in limine, we cannot find ineffective assistance in defense counsel's failure to raise the issue through an objection at trial. It is axiomatic that failure to object to admissible evidence does not constitute deficient performance. *State v. Kelley*, 2d Dist. Montgomery No. 13426, 1993 Ohio App. LEXIS 6332, 1993 WL 544936, *8 (Dec. 22, 1993) (recognizing that "failure to object to admissible evidence does not violate any of defense counsel's essential duties to his or her client"). Because the mixed-martial-arts evidence was admissible, defense counsel had no obligation to object at trial. Boscarino's third assignment of error is overruled.

*State v. Boscarino, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Here the Second District Court of Appeals applied the relevant Supreme Court precedent – *Strickland v. Washington.* This Court agrees with its conclusion that "[i]t is axiomatic that failure to object to admissible evidence does not constitute deficient performance." Of course Boscarino asserts it should not have been found admissible and argues the three non-Ohio cases

relied on by the Second District for admission of similar evidence were stronger cases. (Reply, Doc. No. 9, PageID 1464.) But outside the very narrow range of constitutionally prejudicial evidence, the questions of relevance and prejudice are for the trial judge under an abuse of discretion standard.

If there was no deficient performance in failure to object, then there was no ineffective assistance of trial counsel to excuse failing to raise the First Ground for Relief on direct appeal. The claim is procedurally defaulted and should be dismissed on that basis.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Petitioner raises directly the same claim of ineffective assistance of trial counsel he pled to show excusing cause as to the First Ground for Relief. Because the Second District's decision on that question is neither contrary to nor an objectively unreasonable application of *Strickland*, it is entitled to AEDPA deference. The Second Ground for Relief should therefore be dismissed with prejudice.

**Ground Three: Insufficient Evidence**

In his Third Ground for Relief, Boscarino asserts his conviction is not supported by sufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*,

200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc).

In order for a conviction to be constitutionally sound, every element of the crime must be proved

beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in
> the light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . .  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable
> inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132,

110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to
> groups who might view facts differently than we would. First, as in
> all sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable
> doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781,
> 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the
> evidence, re-evaluate the credibility of witnesses, or substitute our
> judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d
> 618, 620 (6th Cir. 1993). Thus, even though we might have not
> voted to convict a defendant had we participated in jury
> deliberations, we must uphold the jury verdict if any rational trier
> of fact could have found the defendant guilty after resolving all

> disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.*

*Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir.

2011)(en banc).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

The Second District recited the facts relevant to its decision of this assignment of error as

follows:

> **[\*P3]** The present appeal stems from a fight that occurred outside Taggart's Pub on Patterson Avenue. The State's evidence established that Dayton police officer Donnie Smith arrived at the pub in the early morning hours of August 12, 2011 in response to a call about attempted theft of patio furniture. Smith was standing outside the pub speaking with owner Michael Taggart, bouncer Brian Rinderle, and others when a white Cadillac pulled up

13

heading the wrong way on Broadmoor Avenue. The car stopped briefly and three men got out. The men later were identified as Boscarino and two of his friends, Anthony Ballard and Mo Rashad. Upon seeing the three men, Taggart advised Rinderle that he did not want them in the pub because it was near closing time, they were being loud, and they appeared intoxicated. Smith heard Taggart and indicated that he would go speak to the men.

 [*P4]  As Boscarino's friends neared the pub, Boscarino stepped behind some hedges and began urinating on or near the sidewalk. Smith approached wearing his uniform and identified himself as a police officer. He then told Boscarino that he was going to issue a citation for urinating in public. When Smith attempted to escort Boscarino to his police cruiser, Boscarino adopted a fighting stance. Smith stepped back, pulled out his taser, and warned Boscarino to cooperate. Boscarino responded by putting his hands down and appearing to relax. As Smith was putting his taser away, however, Boscarino punched him twice in the face. The blows knocked Smith to the ground. Eyewitness Nicholas Folan then saw Boscarino lean over and deliver a "vicious" blow to Smith's head as he lay on the concrete. Smith appeared to have been knocked unconscious.

 [*P5]  Rinderle saw what happened and ran to help Smith. Rinderle grabbed Boscarino in a bear hug, and they fell to the ground. As Rinderle and Boscarino struggled, Smith re-entered the fray. He fired his taser at Boscarino, but it had no noticeable effect. Pub patrons Folan and Brian Wessling, an off-duty police officer, attempted to help control Boscarino, who would not obey commands. As the altercation continued, Smith made an officer-in-distress call on his radio. Soon thereafter, additional officers arrived and subdued Boscarino. At that time, Smith was laying down. He appeared dazed and semi-conscious. Upon arresting Boscarino, police discovered that he was a licensed mixed-martial-arts fighter.

 [*P6]  Smith was transported by ambulance to the hospital. He was released after being treated for cuts, scrapes, and a hematoma on the back of his head. Smith followed up with his family doctor, Martin Fujimura, later that day. He complained of a headache. He also described seeing "floaters" in his vision. Fujimura noticed an abrasion and a knot on the  back of Smith's head. He diagnosed a concussion as a result of the fight. He recommended a visit to an eye doctor for the floaters. Fujimura opined at trial that Smith's symptoms resulted from the assault by Boscarino. He did not attribute the symptoms to a brain tumor for which Smith

previously had received treatment. Fujimura referred Smith to Raymond Poelstra, a neurosurgeon, to verify his opinion. Fujimura also saw Smith for several follow-up visits. On these occasions, Smith reported having some cognitive problems and stuttering at times.

 [*P7]  Poelstra examined Smith in October 2011, approximately two months after the incident with Boscarino. At that time, Smith complained of continued headaches. Although Smith had a history of chronic headaches, he reported that they had worsened since Boscarino's assault. Smith also reported experiencing difficulty concentrating, slurred speech, stuttering when excited, and short-term memory loss. Poelstra noted that Smith had a history of several prior concussions and treatment for a meningioma, a non-malignant brain tumor. Poelstra ruled out the tumor, or Smith's treatment for it, as a source of his symptoms. Poelstra diagnosed him as suffering  from post-concussive syndrome and attributed his symptoms to the concussion he sustained when Boscarino assaulted him. In reaching this conclusion, Poelstra noted that each successive concussion has an "additive" effect on the harm caused by prior concussions. Therefore, a patient's symptoms may increase in severity with each successive concussion. Poelstra found that to be true in Smith's case.

 [*P8]  Smith also was examined by chiropractor Charles Lee approximately one month after the incident with Boscarino. During his examination, Lee noticed that Smith repeated himself several times, which suggested short-term memory loss. Smith complained of neck and back pain as well as headaches. Lee diagnosed lumbar, cervical, and thoracic sprains and strains. He concluded that these injuries were caused by the altercation with Boscarino. He characterized the injuries as temporary but substantial.

 [*P9]  In his defense, Boscarino called neurologist Alan Jacobs to testify. Jacobs did not examine Smith. He based his testimony on a review of medical records. Jacobs noted the absence of any reported swelling or broken bones in Smith's face after the altercation. He also noted, however, that some swelling had occurred on the back of Smith's head. Jacobs opined that Smith had suffered a mild concussion as a result of trauma to the back of his head. He classified the concussion as being "level one," the lowest level. He reached this conclusion based on what he perceived as a lack of evidence regarding memory loss. He believed Smith was unlikely to have experienced any serious or lasting cognitive impairment as a result of the concussion, which he doubted had resulted in a loss of consciousness. Jacobs also did

15

not attribute Smith's worsening headaches to the altercation with Boscarino. Jacobs attributed them to Smith's prior concussions, his brain tumor and the accompanying treatment, and his history of chronic migraines.

*State v. Boscarino, supra.* Having recited the relevant Ohio case law which adopts the *Jackson*

*v. Virginia*, 443 U.S. 307 (1979) standard, the Second District rejected this claim as follows:

[*P14*]  With the foregoing standards in mind, we conclude that Boscarino's felonious-assault conviction is supported by legally sufficient evidence. To obtain a conviction under R.C. 2903.11(A)(1), the State was required to prove that Boscarino knowingly caused serious physical harm to Smith, who was performing his official duties as a peace officer. The State's evidence, if believed, is sufficient to prove these elements. Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result[.]" Consistent with R.C. 2901.01(A)(5), the trial court gave the following jury instruction regarding the meaning of "serious physical harm":

Serious physical harm to persons means any of the following: a) any physical harm that involves some permanent incapacity, whether partial or total or that involves some temporary substantial incapacity. Temporary unconsciousness constitutes a temporary substantial incapacity and therefore serious physical harm[;] b) any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain; and c) any physical harm that carries a substantial risk of death.

(Tr. Vol. VI at 983).[1]

1  The trial court's instruction that temporary unconsciousness constitutes serious physical harm is not specified in R.C. 2901.01(A)(5). But the instruction is consistent with this court's case law. See, e.g., State v. Booker, 2d Dist. Montgomery No. 22990, 2009-Ohio-1039, ¶ 16 ("Temporary unconsciousness constitutes a temporary substantial incapacity, and therefore serious physical harm.").

[*P15*]  This court has recognized that identifying serious

16

physical harm is not an "exact science" because the definition includes terms such as "substantial," "temporary," "acute," and "prolonged." *State v. Fields*, 2d Dist. Montgomery No. 25461, 2013-Ohio-3031, ¶ 18. Under certain circumstances, a bruise may constitute serious physical harm. Moreover, a jury reasonably may infer serious physical harm where a victim's injuries are serious enough to cause him to seek medical treatment. *Id*.

**[\*P16]**  The evidence here supports a finding that Boscarino knowingly caused serious physical harm to Smith. Although Smith was unsure whether Boscarino knocked him out, the record contains testimony from which the jury reasonably could have inferred that Smith was rendered unconscious as a result of Boscarino punching him. Rinderle testified that Smith "was out" after Boscarino hit him. (Tr. Vol. III at 368). Folan testified that Smith "went straight down to the ground * * * [l]ike it knocked him out that fast." (*Id*. at 383). Police officer John Howard testified that he arrived at the scene and saw Smith on his back. Smith's "eyes were open but he was not moving." (Tr. Vol. IV at 618). According to Howard, Smith "did not appear to be conscious in the way in which he could move or defend himself. He was not coherent. He wasn't moving at all." (*Id*.). Police officer Curry Mire testified that Smith's eyes were "rolled back into his head." (*Id*. at 655). Mire stated that Smith "was not responding to any questions." (*Id*.). At one point, Smith appeared to be "going in and out of consciousness[.]" (*Id*. at 668). Police officer James Hardin testified that he shook Smith but got no response. It appeared to him that Smith was unconscious. (*Id*. at 697).

 **[\*P17]**  In addition to a loss of consciousness, the record contains evidence that Smith suffered a concussion and began experiencing physical problems as a result of being assaulted by Boscarino. As set forth above, his symptoms include worsened headaches, vision problems, difficulty concentrating, slurred speech, stuttering, and short-term memory loss. Smith presented expert testimony from which the jury reasonably could have attributed these symptoms to the blows inflicted by Boscarino and could have found serious physical harm based on them. Viewing the evidence in a light most favorable to the prosecution, the State presented legally sufficient evidence to support the jury's guilty verdict on the felonious-assault charge.

*State v. Boscarino, supra.*

Boscarino's argument as to why the evidence was insufficient emphasizes additional

pieces of evidence which could have been introduced – how Boscarino was trained and how Smith's injuries actually happened. While this would make excellent jury argument, this habeas court is not authorized to substitute its own evaluation of the evidence for what the jury found. The question is not how persuasive the State's case is to this Court, but whether there was enough on each element of the offense. The Second District's conclusion on that question is neither contrary to nor and objectively unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). Therefore Boscarino's Third Ground for Relief should be dismissed.

**Conclusion:**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 1, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen

days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).